**THE GIESZL FIRM**
3200 N. Central Ave.
Suite 1500
Phoenix, AZ 85012
Tel 602-277-0772

Holly R. Gieszl, 013845
holly@gieszlfirm.com
docket@gieszlfirm.com
Counsel For PLAINTIFF

# THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| ALEX MADRID, | **CASE NO: CV-2021-014673** |
| Plaintiff, | |
| vs. | **PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| Paul Penzone, et al., | |
| Defendants. | **(JURY TRIAL DEMANDED)** |

For his Complaint against Defendants, Plaintiff Alex Madrid ("Alex") alleges as follows:

COMPLAINT -                                     1

## THE PARTIES

1. At the time of the incidents at issue in this case, Alex resided in the County of Maricopa, State of Arizona, and was in the custody of the Maricopa County Sheriff's Office ("MCSO") at the Fourth Avenue Jail.

2. Defendant Sheriff Paul Penzone ("Defendant Penzone") is the duly elected sheriff of Maricopa County, Arizona, and at all times referenced herein was acting under the color of law.

3. Under Arizona law and the doctrine of respondeat superior, Defendant Penzone is vicariously responsible for the acts and omissions of employees committed in the scope and course of their employment at the MCSO and whose negligence caused Alex's injuries.

4. Sheriff Penzone Penzone has a constitutional duty to "[t]ake charge of and keep the county jail ... " A.R.S. § 11-441.5. (Supp. 2010); accord A.R.S. § 31-101 (2002). That the Sheriff, and each MCSO detention officer has a duty to protect detainees from excessive force and assault by officers. At all times relevant, Defendant Penzone was acting under color of law.

5. Defendant Alger is a detention officer who, at all times relevant to this

COMPLAINT - 2

Complaint, was acting within the course and scope of his employment, and under color of law as a detention officer with the MCSO, and his actions and failures deprived Alex of his particular rights under of the United States Constitution. He is sued in his official and individual capacity.

6. Defendant Anderson is a detention officer who, at all times relevant to this Complaint, was acting within the course and scope of his employment, under color of law as a detention officer with the MCSO, and his actions and failures deprived Alex of his particular rights under of the United States Constitution**.** He is sued in his official and individual capacity.

7. Defendant Tolbert is a detention officer who, at all times relevant to this Complaint, was acting within the course and scope of his employment, under color of law as a detention officer with the MCSO, and his actions and failures deprived Alex of his particular rights under of the United States Constitution. He is sued in his official and individual capacity.

8. Other potentially responsible parties, including but not limited to, other detention officers, may be added as discovery establishes that any such officer acted with gross negligence and/or deliberate indifference to Alex's safety.

**JURISDICTION AND VENUE**

COMPLAINT -                                                     3

9.  This case arises under Arizona common law, the Constitution of the State of Arizona, and the 14th Amendment of the Constitution of the United States of America.

10.  Defendants removed this case from Maricopa County Superior Court pursuant to 28 U.S. Code § 1441. This Court has original jurisdiction over Plaintiff's claims brought under federal law pursuant to 28 U.S.C. § 1332 and the U.S. Const. art III, § 2. This court has supplemental jurisdiction over Plaintiff's claims brought under Arizona state law pursuant to 28 SU.S.C. §1367,

11.  Venue is appropriate in this court as all defendants currently reside, or resided at all relevant times, within the State of Arizona and all acts that give rise to this action occurred in Maricopa county, Arizona.

12.  Plaintiffs timely served a notice of claim pursuant to A.R.S. § 12- 821.01 on Sheriff Paul Penzone, and Defendants Anderson and Tolbert, to which no Defendant has responded, and the claim therefore is deemed denied by operation of statute.

**FACTS APPLICABLE TO ALL COUNTS**

13.  On September 18, 2021, in 4A Housing Unit at 4th avenue Jail, in and near cell 4A2.

14.  Alex was viciously assaulted by Defendants Anderson and Alger during the process of his locking down in his cell. At no time during the lock down process did Mr. Alex refuse to lock down.

COMPLAINT -                             4

15. When Defendant Alger ordered Alex to "lock down", Alex began to do just that. He got up and walked from the table in the day room toward his cell. Apparently believing Alex was not walking fact enough, Officer Alger told him, "When I say lock down you lock the fuck down. When I say jump, you say how high."

16. Alex paused, at his cell door, but at no time pushed or physically confronted either Defendant Alger or Anderson. Alex entered his cell and turned around, and Officer Alger suddenly and without provocation of any kind, used an "impact push" to shove Alex into the back of his cell. Alex then just stood in the back of the cell, not threatening either Defendant Alger or Anderson.

17. Defendants Alger and Anderson then inappropriately and for no reason followed Alex into his cell to "teach him a lesson". However, the cell door unexpectedly closed and locked behind the Defendants. They found themselves locked inside Alex's cell.

18. Despite no aggression or threat from Alex, Defendants Alger and Anderson then "took down" Alex in the cell. They smashed Alex's face into the concrete and his head and then pinned Alex's upper body and arms on the floor. All of this was wholly unnecessary. After the beating, Defendant Alger called for additional

COMPLAINT -                                     5

officers to unlock the cell door and they removed Alex. Eventually, Alex was four pointed with chain restraints at his hands and feet.

19. Defendants Alger and Anderson had no justification to use any force at the moment they attacked Alex, who was inside his cell, not resisting. There was no need for Defendants Alger and Anderson to do anything but close the cell door after Alex entered the cell.

20. After the initial assault, and while Alex was restrained and on the floor in the hallway outside the cell, Defendant Tolbert tasered Alex for no reason and despite any threat. Use of the taser was wholly unjustified. After being tased, Alex was carried in "four point" restraints by his arms and legs.

21. MCSO does not provide training at all or provides inadequate training in its Training Academy in the proper use of force, avoiding excessive force, and the use of de-escalation techniques to deal with detainees during routine interactions. The lack of training has created a pattern and practice of unnecessary violence and excessive force. All too often, as in Alex's case, this means that ill-trained officers' interactions with detainees include improper verbal exchanges followed by escalating–use of physical assault by the officer on detainees. Officers swear at detainees and use

COMPLAINT - 6

vulgarity to insult and disrespect detainees, followed by a vicious kind of attack that befell Alex.

22. Additionally, the MCSO has no (or has wholly inadequate) policies, procedures, and guidelines to assure the safety of detainees from excessive force by detention officers. There was no reason or justification for Officers Alger and Anderson to follow Alex into his cell and physically assault him. They should have simply locked him down by closing his cell door. Instead, they ended up locked in the cell with Alex because they were so "hot headed" as to forget that the cell door would close. Similarly, Officer Tolbert had no justification for tasing Alex, who was on the floor and cuffed up. He gratuitously joined in the "beat down" on Alex.

23. The laws of the state of Arizona and the United States governing the use of force by detention officers were clearly established at the time the individual defendants assaulted Alex.

24. Each of the individual Defendants knew the laws regarding use of force, and each defendant knew that the force each used was objectively unreasonable and amounted to nothing more than punishment.

25. Each defendant continued to use force *after* Alex was restrained, was not resisting, and did not pose a threat to anyone.

COMPLAINT - 7

26. As set forth above, each defendant's conduct was a cause-in-fact- and proximate cause of Alex's injuries.

27. Further as set forth above, each individual defendant committee not only affirmative acts of excessive force but, also, participated in the other individual defendants' affirmative acts and failed to take any action to prevent the other defendants from injuring Alex. Thus, each officer was an integral participant in the violations committed by each other officer and the sequence of events that violated Alex's constitutional rights.

28. At all times pertinent, each defendant was acting under color of law.

## COUNT ONE
## NEGLIGENCE AND GROSS NEGLIGENCE
## (DEFENDANTS ANDERSON AND TOLBERT)

29. The foregoing paragraphs are incorporated as though fully set forth herein.

30. Defendants owed a non-delegable duty for the care, custody, and control of Plaintiff, a pretrial detainee in the custody of the MCSO. The duty for care, custody, and control includes the duty not to assault detainees as well as the duty to take reasonable steps to protect detainees from excessive use of force and assault by other detention officers.

31. When they attacked and tased Alex, Defendants Alger, Anderson and Tolbert, knew or had reason to know that they were using excessive force and taking

COMPLAINT - 8

actions that placed Alex at unreasonable risk of bodily harm with a high probability that substantial harm would result.

32. Each Defendant unreasonably failed to protect Alex from the unprovoked and unwarranted attack by each other Defendant and, instead, joined in the "beat down".

33. As a result of the Defendants' gross negligence, Alex suffered injuries and pain and suffering that lasted for days.

## COUNT TWO
## VICARIOUS LIABILITY
## (DEFENDANT-SHERIFF PENZONE)

34. The foregoing paragraphs are incorporated as though fully set forth herein.

35. Defendant Sheriff Penzone are vicariously liable through the doctrine of respondeat superior for the negligence and gross negligence of Defendants Anderson and Tolbert.

## COUNT THREE
## ARTICLE 2, SECTIONS 2 AND 15 OF THE ARIZONA CONSTITUTION
## (ALL DEFENDANTS)

36. The foregoing paragraphs are incorporated as though fully set forth herein.

37. Article 2, section 2 of the Arizona Constitution guarantees individuals due process of law, and Article 2, section 15 of the Arizona Constitution forbids cruel and unusual punishment. For the reasons set forth above, Defendants Penzone's, Alger's,

Anderson's, and Tolbert's conduct violated these provisions of the Arizona Constitution.

38. As a direct and proximate result of Defendants' breach of these constitutional provisions, Alex was injured and suffered pain and mental and physical injury.

)

## COUNT FOUR
## 42 U.S.C. § 1983 - EXCESSIVE FORCE
## (DEFENDANTS ALGER, ANDERSON, AND TOBERT

39. The foregoing paragraphs are incorporated as though fully set forth herein.

40. Defendants owed a non-delegable duty for the care, custody, and control of Plaintiff, a pretrial detainee in the custody of the MCSO. The duty for care, custody, and control includes the duty not to assault detainees as well as the duty to take reasonable steps to protect detainees from excessive use of force and assault by other detention officers.

41. When they attacked and tased Alex, Defendants Alger, Anderson and Tolbert, knew or had reason to know that they were using excessive force and taking actions that placed Alex at unreasonable risk of bodily harm with a high probability that substantial harm would result.

COMPLAINT -                                  10

42. Each Defendant unreasonably failed to protect Alex from the unprovoked and unwarranted attack by each other Defendant and, instead, joined in the "beat down".

43. As a result of the Defendants' gross negligence, Alex suffered injuries and pain and suffering that lasted for days.

## COUNT FIVE
## 42 U.S.C. § 1983 – FAILURE TO TRAIN
## (DEFENDANT SHERIFF PENZONE)

44. The foregoing paragraphs are incorporated as though fully set forth herein.

45. Defendants Sheriff Penzone and Maricopa County failed to train or inadequately trained MCSO detention officers, including Defendants Alger, Anderson, and Tolbert, in proper management of detainees, including during lock down and other usual and recurring situations with which detention officers such as Defendants deal.

46. This failure to train was the cause-in-fact and the proximate cause of Defendants Alger's, Anderson's, and Tolbert's actions toward Alex, and deprived Alex of his right to be free from excessive force as required under the United States Constitution.

47. Defendant Penzone was deliberately indifferent to the substantial risk that the lack of training and/or inadequate training would lead to and fail to prevent violations of law by MCSO detention officers, despite Defendants Penzone's and

COMPLAINT - 11

Maricopa County's knowledge of the consequences of failure to adequately train detention officers.

48. Defendants Penzone's failure to provide adequate training played a substantial part in bringing about or actually causing the injuries that Alex suffered.

49. Defendants Penzone ~~and Maricopa County~~ had ample facts available to him through routine reports to have actual or constructive notice of MCSO detention officers' inadequate training and substantial likelihood that such training would result in detention officers' violation of the constitutional rights of Alex and others like him.

## **INJURIES AND DAMAGE**

50. Alex was taken to medical after the assault. He suffered cuts and bruises over large areas of his body, and had body pain for days after the assault, owing both to the beating and being carried while "four-pointed."

51. Alex was traumatized after the beating and to date continues to fear being attacked when he enters his cell at "lock down" time.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment against Defendants as follows:

A. For general damages, including but not limited to compensation for pain and suffering and emotional distress;

B. For nominal damages as permitted under 42 USC §1983;

COMPLAINT -                                12

C. For punitive damages as permitted under 42 U.S.C. §1983 et seq..

D. For attorney fees and costs;

E. For taxable costs and pre- and post-judgment interest to the extent permitted by law; and

F. Such other relief as the Court deems just and proper.

)

)

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues in this matter triable to a jury.

Dated this 15th day of NOVEMBER 2022.

**THE GIESZL FIRM**

/s/Holly R. Gieszl
3200 N. Central Ave. Ste. 1500
Phoenix, AZ 85012
Counsel for Plaintiff

COMPLAINT -                    13

## CERTIFICATE OF SERVICE

On this 15th day of November 2022, the foregoing was filed with the Arizona District Court Clerk's Office using the CM/ECF System for filing, which will provide a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Holly R. Gieszl*
*Holly R. Gieszl*

COMPLAINT - 14